# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14 C 2518 |
| | ) |
| LUZ ESTRADA, indv. and d/b/a EL | ) Judge John J. Tharp, Jr. |
| POTRILLO VAN NEK, INC. d/b/a | ) |
| LOS POTRILLOS BAR and EL | ) |
| POTRILLO VAN NEK, INC. d/b/a | ) |
| LOS POTRILLOS BAR, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the plaintiff's motion for default judgment. For the reasons explained below, the Court awards the sum of $6,800 in statutory liquidated damages, enhanced damages, and attorney's fees and costs, and enters a final default judgment against the defendants in that amount.

## I. BACKGROUND

Plaintiff J&J Sports Productions, Inc. ("J&J Sports"), filed this action alleging that Defendants Luz Estrada, individually and d/b/a El Potrillo Van Nek, Inc. d/b/a Los Potrillos Bar, and El Potrillo Van Nek, Inc. d/b/a Los Potrillos Bar, knowingly and willfully violated certain provisions of the Communications Act of 1934, 47 U.S.C. § 605 ("Act") and the Cable Communications Policy Act of 1984, 47 U.S.C. § 553, by unlawfully intercepting and exhibiting the "Juan Manuel Marquez v. Serhiy Fedchenko, WBO Junior Welterweight Title Program"

("Program") on April 14, 2012.[1] On May 21, 2014, this Court found the defendants in default for failure to answer or otherwise plead to the plaintiff's complaint by May 5, 2014. Dkt. 8. J&J Sports now moves for default judgment; its motion is accompanied by a memorandum of law, an affidavit, and other documents in support of its request for statutory and enhanced damages, attorney's fees and costs, and the entry of an award against the defendants.[2]

The background facts of this case, except those relating to damages, are taken from the allegations in the plaintiff's complaint and are deemed admitted as a consequence of the defendants' default. *See, e.g., Black v. Lane,* 22 F.3d 1395, 1397 n.4 (7th Cir. 1994). J&J Sports has established that it paid for and was thereafter granted the exclusive nationwide television distribution rights to the Program. Various commercial establishments (*i.e.,* hotels, bars, restaurants, etc.) could, for a fee, obtain limited sublicensing rights from J&J Sports to exhibit the Program to patrons within their respective establishments. J&J Sports states that it expended substantial sums marketing, advertising, promoting, administering, and transmitting the Program to its paying customers, the aforementioned commercial establishments. Understandably, J&J Sports wishes to enforce its distribution rights and ensure that only those who have paid the appropriate fee, pursuant to a contract, gain access to the Program.

---

[1] The plaintiff states in its complaint that the date of the alleged interception and exhibition was "April 14, 2014." Dkt. 1 ¶ 14. Given that the complaint was filed in this Court on April 9, 2014, five days before the alleged event occurred, and given that the date is stated elsewhere in the complaint and in other pleadings before this Court as April 14, 2012, the Court assumes that the correct date of the alleged events was April 14, 2012. *Id.* ¶¶ 9-10

[2] The imposition of liability is proper against both the business entity, El Potrillo Van Nek, Inc., and the individual defendant, Luz Estrada, because a principal or officer of the business entity, as someone "'who has the right and ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception].'" *Hard Rock Café Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).

To ensure that only legitimate sub-licensees receive the Program, the plaintiff retains investigators that visit commercial establishments to determine whether the Program is being exhibited without proper authorization. J&J Sports has submitted the affidavit of one such investigator, who avers that he entered Los Potrillos Bar at 9:06 p.m. on April 14, 2012, the night of the Program, did not pay a cover charge (none was needed), and observed three televisions displaying the Program.[3] The investigator counted between 12 and 21 patrons in the defendants' establishment on three separate headcounts.

As a result of the defendants' default, they are deemed to have unlawfully intercepted the match and shown it to their patrons and to have done so willfully and for the purposes of direct and indirect commercial advantage or private financial gain.[4] *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

## II. ANALYSIS

J&J Sports alleges that the defendants violated both 47 U.S.C. §§ 605 and 553. The plaintiff's complaint, brief, and affidavit support a conclusion that the defendants intercepted, without authorization, a transmission of the Program and broadcast it to its patrons. Whether § 605 or § 553 applies to those facts depends on the point at which the alleged interception

---

[3] The investigator's affidavit states that he observed "two (3) televisions located inside this establishment" and then went on to describe three distinct televisions. The Court assumes that the word "two" is a typo, and that the investigator witnessed three televisions displaying the Program.

[4] While it is impossible without discovery or an admission from the defendants to determine what method the defendants used to access the cable signal, it is logical to conclude that they must have used an illegal receiver, misrepresented their business establishment as a residence, or engaged in "mirroring" by taking a legitimate receiver from a home to the business establishment in order to intercept the plaintiff's Program.

occurred. However, the record contains no allegations or evidence substantiating the nature of the transmission (*i.e.,* transmission over a cable system or satellite broadcast) that was intercepted by the defendants. That said, the Court concludes that although the precise means of transmission has not been determined, under the circumstances of this case, where the plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of the defendants' failure to appear or defend in this adjudication, J&J Sports should not suffer the resulting prejudice. In any event, J&J Sports is seeking a judgment and damages pursuant to § 605 only, and the practical impact of which statute applies is nil; the Court's calculation of damages fits within either statutory scheme. Thus, the Court concludes that the plaintiff has established a violation of § 605.

Under §605(a), a claimant may elect actual or statutory damages pursuant to § 605(e)(3)(C)(i). The plaintiff has elected statutory liquidated damages, which range from a minimum of $1,000 to a maximum of $10,000, within the Court's discretion.[5] The plaintiff also seeks enhanced damages for willful violations under § 605(e)(3)(C)(ii).[6] That section permits enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.,* 146 F. Supp. 2d 955, 959-61 (E.D. Wis.

---

[5] Under § 605(e)(3)(C)(i)(II), an aggrieved party "may recover an award of statutory damages for each violation of subsection (a)…in a sum not less than $1,000 or more than $10,000 as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

[6] Section 605(e)(3)(C)(ii) provides that:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages…by an amount of not more than $100,000 for each violation on subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).

2001). The plaintiff has also requested an award of attorney's fees and costs in the amount of $2,040.25 pursuant to § 605(e)(3)(B)(iii).[7]

The Court first turns to the plaintiff's request for statutory damages. As courts in this district have previously noted, "[w]hen the number of patrons at defendant's establishment is known, most courts award damages under § 605 based on the number of patrons." *J&J Sports Production, Inc. v. Ramirez,* No. 08 C 03354, Minute Order, at 1-2 (N.D. Ill. Sept. 18, 2008), ECF No. 20 (basing award on $55 per patron, citing *That's Entertainment, Inc. v. Old Bridge Tavern,* No. 94 C 02612, 1996 WL 148045 (N.D. Ill. Mar. 28, 1996) (awarding $55 per patron to "sufficiently compensate[] plaintiff while…also deter[ing] defendant from future violations"); *J&J Sports Production, Inc. v. Schrader Rest. Corp.,* 485 F. Supp. 2d 422, 423 (S.D.N.Y. 2007) (awarding damages based on Judge Baer's formula of $50 per patron, plus $1,000 for each willful violation, plus attorney's fees and costs); *see also Googies Luncheonette,* 77 F. Supp. 2d at 490 (adopting a method of awarding a set sum to be multiplied by the number of patrons, plus any cover charge or other profit that can be attributed to the unauthorized showing, in order to fully compensate the plaintiff and fully divest the defendant of any profits). On the date in question, the investigator observed, on three separate headcounts, a maximum of 21 patrons.[8]

While other courts have determined a set sum per patron (*i.e.,* $55 per patron), the plaintiff here has submitted a rate card setting the fees that commercial establishments would

---

[7] Section 605(e)(3)(B)(iii) states that the Court "shall direct the recovery of full costs, including awarding attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

[8] The Court uses the maximum patrons counted by the investigator, but notes that both the total and maximum number of patrons may have been higher, depending on the rate of turnover of customers. However, the materials submitted by the plaintiff do not provide a way for the Court to determine the actual number of different customers that viewed the Program.

have had to pay to obtain sublicensing rights. Based on a maximum of 21 patrons,[9] the defendants would have had to pay $1200 to order the Program. *See* Dkt. 10-3, Ex. C (minimum seating of 0 to 100 subject to a rate of $1,200). This base amount, however, would only compensate the plaintiff for its loss, and not fully divest the defendants of any profits derived from unlawfully exhibiting the program, such as the sale of drinks. But as noted above, Plaintiff has alleged and, in the absence of any response by defendants, the Court has found that the defendants' violation was willful within the meaning of the Act, and therefore subject to enhanced damages.

In regard to enhanced damages, the Act simply sets forth a maximum recovery and otherwise leaves the matter to the discretion of the Court. In considering how much to award in enhanced damages, courts have considered a number of factors, including: (1) the number of violations; (2) defendants' unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendants advertised for the event; and (5) whether the defendant collected a cover charge on the night of the event. *See Ramirez,* No 08 C 03354, at 2 (citing *Kingvision Pay-Per-View, Ltd. v. Rodriquez,* No. 02 Civ. 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). In addition to those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct. *See, e.g., Garden City Boxing Club, Inc. v. Luis Polanco & Luischia Restaurant Corp.*, No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); *Rodriguez,* 2003 WL 548891, at *2. "An additional award for willfulness will put violators 'on notice that it costs less to obey the…laws

---

[9] The plaintiff states in its Motion for Default Judgment that approximately 16 people were in Los Potrillos Bar on the evening of April 14, 2012, which appears to be an average of the headcounts conducted by the investigator. *See* Aff. of Anthony Brunelle at 2 (counting 12, 15, and 21). Whether the number of patrons was an average of 16 or a high of 21, the defendants would have had to pay $1,200 to order the Program because the plaintiff's rate of $1,200 applies to 0 to 100 patrons.

than to violate them.'" *Googies Luncheonette,* 77 F. Supp. 2d at 491 (citing *Rodgers v. Eighty Four Lumber Co.,* 623 F. Supp. 889, 892 (W.D. Pa. 1985)).

The record before the Court does not establish that the defendants advertised the Program. However, the investigator's affidavit does establish that the defendants displayed the Program on three of the defendants' televisions, making the plaintiff's Program the sole entertainment exhibited on the night in question. Nothing in the record indicates any other theft of cable services or other intellectual property by this defendant. With *Googies Luncheonette* as a guide, the Court therefore awards the plaintiff an additional $3,600 in enhanced damages—a factor of four times the base award derived from the defendants' display of the Program on three televisions, additional profits derived from the unlawful exhibition of the Program (*e.g.,* drink sales), in addition to the need to deter future violations. *See Googies Luncheonette,* 77 F. Supp. at 491 (awarding enhanced damages of a factor of eight times the base award "to…persuade [the] defendant that it is not only lawful to obtain property only as allowed, but less expensive."). Accordingly, statutory and enhanced damages total $4,800.

Finally, the Court has reviewed the materials submitted in support of the plaintiff's request for $2,040.25 in attorney's fees and costs. The Court finds the amount in the affidavit well supported and reasonable given the circumstances. Therefore, the sum of damages and attorney's fees and costs is $6,840.25, which the Court, in its discretion and consistent with the statute, adjusts to $6,800.

\*     \*     \*

For the reasons stated above, the Court enters a final judgment for the plaintiff and against the defendants, jointly and severally, in the amount of $6,800.

7

Entered: June 11, 2014

_____
John J. Tharp, Jr.
United States District Judge